UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAM NEHARA,<br><br>            Plaintiff,<br><br>      v.<br><br>THE STATE OF CALIFORNIA, et al.,<br><br>            Defendants. | Case No.: 1:10-cv-00491 JLT<br><br>ORDER ON PLAINTIFF'S MOTIONS IN LIMINE<br><br>(Doc. 142-144)<br><br>ORDER ON DEFENDANT'S MOTIONS IN LIMINE<br><br>(Doc. 141) |

Before the Court are the motions in limine filed by Plaintiff Ram Nehara ("Plaintiff") and the California Department of Corrections and Rehabilitation ("Defendant" or "CDCR") on March 8, 2013. (Docs. 141-144). The Court held a final pre-trial conference on March, 25, 2013, at which the Court heard the oral arguments of counsel.

**BACKGROUND**

Plaintiff initiated this action by filing a complaint on March 17, 2010. (Doc. 1). Plaintiff, a former nurse at North Kern State Prison ("NKSP"), alleged his former employers retaliated against him for complaining about discriminatory overtime and shift assignments. Plaintiff alleged he was forced to manipulate an incident report and subjected to an internal affairs investigation and disciplinary hearing. According to Plaintiff, the defendants were liable for retaliation, intentional infliction of emotional distress, disability discrimination, and defamation.

Plaintiff's complaint was dismissed with leave to amend on July 16, 2010 (Doc. 26), and he filed a First Amended Complaint on August 2, 2010. (Doc. 43). Following motions to dismiss filed by the defendants, the Court dismissed Plaintiff's First Amended Complaint for failure to state a claim against NKSP on November 5, 2010. (Docs. 54, 56). Plaintiff filed a Second Amended Complaint on November 18, 2010. (Doc. 67). Again, the defendants filed a motion to dismiss (Docs. 58-59). The Court determined Plaintiff failed to exhaust his administrative remedies and dismissed the state law tort claims against NKSP and individual defendants with prejudice on August 2, 2011. (Doc. 71).

On August 8, 2011, Plaintiff filed his Third Amended Complaint ("TAC") against NKSP, the CDCR, and the State of California alleging liability for Title VII violations, including (1) retaliation and (2) discrimination. (Doc. 75). The defendants filed their answer on August 23, 2011. (Doc. 77).

The CDCR filed a motion for summary judgment, which was granted in part by the Court on February 11, 2013. (Doc. 135). The Court determined Plaintiff failed to carry his burden to establish a prima facie case for discrimination under Title VII, either on the theory of disparate treatment or a hostile work environment. Id. at 13-16. Thus, summary adjudication of the claim was granted. Id. at 16, 22. However, the Court found Plaintiff stated a prima facie claim for retaliation and the proffered evidence was sufficient to raise genuine issues of fact related to his claim. Id. at 18-22.

In addition, the CDCR moved to dismiss the State of California and NKSP as defendants. (Doc. 139 at 17). The Court noted: "the CDCR is a legal entity amenable to suit and maintains a monetary budget separate from the State of California and against which enforcement of any judgment may be had." Id. Accordingly, the State of California and North Kern State Prison were dismissed without prejudice to any future judgment action as may be needed, but with prejudice as to the merits of Plaintiff's claim. Id.

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.

2003) (citations omitted). Likewise, the Seventh Circuit found motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). A court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). Therefore, the Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712.

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

## PLAINTIFF'S MOTIONS IN LIMINE

### I.  Evidence of the administrative proceedings

Plaintiff seeks an order excluding all findings and evidence, including testimony, adduced in the administrative proceedings by the State Personnel Board and the Board of Registered Nursing. The only exception to this is the fact that "Defendant CDCR initiated those proceedings and said proceedings resulted in Nehara's termination from CDCR and the eventual revocation of his nursing license."

Defendant agrees in large part that the information from these hearings should not be admitted at trial. Moreover, Defendant notes that, in their joint pretrial statement, the parties agreed that,

> (1) On August 4, 2010, the California Board of Registered Nursing issued a decision revoking plaintiffs registered nursing license; (2) On July 8, 2011, the State Personnel Board issued a decision finding that plaintiff engaged in misconduct and holding that the penalty of dismissal was just and proper. Those stipulated facts should be read to the jury along with Ninth Circuit Model Jury Instruction 2.2 (Stipulations of Fact).

Defendant agrees neither party should use the transcripts for any purpose and that the factual findings may not be admitted. Defendant clarifies though, that the documents introduced at those hearings may be used and may call the witnesses who testified at either hearing.

Given the agreement of the parties, the Court will **GRANT IN PART** the motion but will exclude only the transcripts and findings from the hearings.  The mere fact that documents were used at these hearings and that witnesses testified does not preclude their admissibility at trial nor is there any indication that unfair prejudice could result from the use of this evidence. Thus, to this extent, the motion is **DENIED**.

## II. Witnesses not previously identified

Both parties seek an order precluding the use of witnesses at trial who were not identified in discovery

### a. Plaintiff's motion

Plaintiff seeks an order precluding Defendant from presenting any witness at trial who was not disclosed in the initial disclosure required by Fed. R. Civ. P. 26(a)(1)(A).  Specifically, Plaintiff contends Dr. Emanuel V. Dozier, Rachel Soares, Dr. Corazon Yuzon, Dr. Lisa Nelson, Lucy Hernandez, C. Stephens, Robert Sanchez, Nida Spalding, Joan Matteucci, Humberto Flores, Administrative Law Judge and Jeanne R. Wolfe, Administrative Law Judge, were not disclosed by Defendant.

Fed. R. Civ. P. 26(e) requires a party who has responded to an interrogatory or who has made a disclosure under Fed. R. Civ. P. 26(a) to supplement its response in a timely manner if the party learns that its response is incomplete and if the additional information has not otherwise been made known to the other party during the discovery process.  Fed. R. Civ. P. 37(c) (1) restricts a party from using the information or witnesses at trial *unless* the failure to supplement was substantially justified or harmless.

> "In determining whether to preclude introduction of evidence pursuant to FRCP 37, courts consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." *San Francisco Baykeeper v. West Bay Sanitary Dist.,* 791 F.Supp.2d 719, 733 (N.D.Cal.2011). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless."

*R & R Sails, Inc. v. Insurance Co. of the State of Pennsylvania,* 673 F.3d 1240, 1246 (9th Cir.2012). Notably, though Plaintiff asserts Defendant did not identify these witnesses in its initial disclosure and

4

did not supplement it, Plaintiff did not assert he never learned of these witnesses during discovery.

Defendant counters that it does not intend to call these witnesses except for impeachment purposes. Indeed, Fed. R. Civ. P. 26(a)(1)(A) reads,

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . .

Given this, Plaintiff's motion is **DENIED** except that the motion is **MOOT** as to witnesses Flores and Wolfe given Defendant has indicated it will not call these witnesses in light of Plaintiff's motion in limine #1.

### a. Defendant's motion

Defendant seeks an order precluding Plaintiff from presenting any witness at trial who was not disclosed in the initial disclosure required by Fed. R. Civ. P. 26(a)(1)(A). (Doc. 141 at 6-7)  Likewise, Defendant seeks to preclude the presentation of any expert witness who was not properly disclosed. Id. Defendant contends Elizabeth Barnhart, Bertha Sanchez, Jeff Kirby, Manju Nehara, Dr. David Mano, Daniel Luna and Edward Lear were not disclosed by Plaintiff. Id.

Though Defendant asserts that Plaintiff failed to disclose these witnesses, in its papers, it does not claim that is was not made aware of them during the discovery process. (Doc. 141 at 7)  The only surprise claimed by Defendant is due to Plaintiff failing to provide a summary of their expected testimony. Id.

Plaintiff claims, however, that these witnesses were fully known to Defendants based upon their role in the events. (Doc. 149 at 4) They provide documents demonstrating Bertha Sanchez, Jeff Kirby and Daniel Luna were union representatives who made efforts on Plaintiff's behalf, and documenting Edward Lear was Plaintiff's attorney in the Board of Nursing action. These documents were produced by Defendant during discovery. (Doc. 149-1 at 3) They also state that Defendants were aware that Manju Nehara is Plaintiff's wife and that Dr. Mano was one of Plaintiff's treating physicians, given the subpoena for records issued to him by Defendant. Id. Plaintiff explains that Elizabeth Barnhart is a former employee at NKSP. (Doc. 149 at 4)

As to Bertha Sanchez, Jeff Kirby, Daniel Luna, and Edward Lear, the Court does not find Defendant was surprised by these witnesses, given the documents produced by Defendant in discovery demonstrate awareness of them and their involvement in the events.[1] However, as to Manju Nehara and Elizabeth Barnhart, there is no showing by Plaintiff that these people were ever identified in discovery as having information about this case or that there was reason for Defendant to be alerted to their importance to this case. Likewise, it is difficult to appreciate how Dr. Mano is significant to this case given Plaintiff's counsel were unable to provide even a limited summary of his expected testimony at the time of hearing or to detail when he provided services to Plaintiff.

Therefore, the motion is **GRANTED** as to Elizabeth Barnhart, Manju Nehara and Dr. David Mano and **DENIED** as to Bertha Sanchez, Jeff Kirby, Daniel Luna. As to Edward Lear, the motion is **MOOT** given Plaintiff has indicated he will not call this witness in light of Plaintiff's motion in limine #1.

**III.    Testimony from Michael Cavenaugh related to the March 18-19, 2007 shift**

Plaintiff seeks an order precluding Michael Cavenaugh from testifying about whether Plaintiff slept on an overnight shift on March 18 – 19, 2007. Plaintiff asserts Cavenaugh has no personal knowledge of these events and provides excerpts from his deposition transcript in which he testifies to this lack of personal knowledge.

Defendant admits Cavenaugh did not work on the March 18-19, 2007 shift and agrees that Cavenaugh will not offer any testimony claiming he has personal knowledge of the events. However, Cavenaugh prepared a report alleging Plaintiff committed misconduct based upon the reports of other employees. Defendant will offer Cavenaugh to testify why he submitted the report and why he thought the conduct was sufficiently egregious to form the basis for the report. Defendant will also offer the testimony of those who *do* have personal knowledge of the events which were summarized in Cavenaugh's report. In addition, Defendant will seek to introduce the report as a business record.

Plaintiff's attempt to preclude Cavenaugh from testifying about the fact he initiated the complaint to the nursing board would improperly preclude Defendant from demonstrating a legitimate,

---

[1] On the other hand, at this time, the Court cannot figure how they have personal knowledge of events that are relevant to the issues in this case or that they testimony would not merely be duplicative of other testimony. However, these issues are not yet before the Court.

non-discriminatory basis for its firing decision. Therefore, the motion is overbroad. However, because no lay witness may testify to events about which they have no personal knowledge, the Court **GRANTS IN PART** the motion so that Cavenaugh will be precluded only from testifying that he has personal knowledge about the events of the shift Plaintiff worked on March 18-19, 2007.

## DEFENDANT'S MOTIONS IN LIMINE

### I. Expert witnesses not previously or properly disclosed

Defendant moves the Court to exclude testimony by any expert who was not disclosed and, specifically, the testimony of Dr. Eugene Couture and Dr. Ana Chiles. (Doc. 141 at 8, 10-11) Defendant complains that though Plaintiff listed these witnesses on his expert disclosure made on September 28, 2012 (Doc. 141-1 at 122-124), he did not indicate whether either doctor was retained and failed to provide an expert report or a summary of the facts and opinions about which the experts were expected to testify. (Doc. 141 at 8) When Defendant raised these deficiencies with Plaintiff on October 2, 2012 (Doc. 141-1 at 126-127), he did not amend the disclosure but, instead, waited more than a month, until November 9, 2012 (Doc. 141-1 at 109-111), and then served a "supplemental" disclosure which identified Dr. Chiles and Dr. Gary Longwith. (Doc. 141 at 8) Plaintiff identified these experts as non-retained but Defendant claims he failed to provide a summary of the facts and opinions about which the experts were expected to testify. Id. at 9. In addition, Defendant reports, despite the characterization of Dr. Longwith as a treating physician, he did not provide treatment to Plaintiff. Id. Moreover, Defendant asserts Plaintiff affirmatively reported that Dr. Longwith was retained and that describing him as non-retained is an improper attempt to avoid proper disclosure. Id.

Plaintiff explains that Dr. Chiles is a treating physician which excuses her from providing an expert report which would be required otherwise by Fed. R. Civ. P. 26(a)(2)(B). (Doc. 149 at 6) Likewise, Plaintiff argues that designation of Dr. Longwith was timely and that he was a treating physician in that Plaintiff underwent an initial consultation with Dr. Longwith and the doctor reviewed records of the other doctors. Id. Notably, Plaintiff failed to identify Dr. Longwith in his initial disclosures and in response to interrogatories. (Doc. 141-1 at 25-26)

Rule 26(a)(2) provides that a party must disclose the identity of any expert witness it intends to use at trial. Fed. R. Civ. P. 26(a)(2)(A). Parties are required to make expert disclosures "at the times

and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).  If the expert witness is retained or specially employed to provide expert testimony, the disclosure must include a report that is prepared and signed by the expert.  Fed. R. Civ. P. 26(a)(2)(B).

A party is required to "supplement" its expert reports to reflect any new information discovered after the report's initial disclosure.  Fed. R. Civ. P. 26(a)(2)(E) & 26(e)(2).  "[D]esignation of 'supplemental' experts[, therefore,] is an ongoing obligation of the parties to correct earlier opinions disclosed by an expert.  It does not refer to the disclosure of a new expert" once the court-ordered deadline for simultaneous initial disclosure of experts has expired.  United States v. Southern Cal. Edison Co., Case No. 1:01-CV-5167 OWW  DLB, 2005 U.S. Dist. LEXIS 24592, at *8 (E.D. Cal. Sept. 23, 2005) (quoting Hampton v. Schimpff, 188 F.R.D. 589, 590 (D. Mont. 1999)).  A party may file a "rebuttal" expert report to "contradict or rebut evidence" offered by another party in its initial expert disclosures.  Fed. R. Civ. P. 26(a)(2)(D)(ii).

Here, characterization of Plaintiff's second disclosure as "supplemental" is incorrect and seeks to avoid the expert disclosure deadlines set by the Court.  See Metro Ford Truck Sales, Inc. v. Ford Motor Co., 145 F.3d 320, 324 (5th Cir. 1998) ("The purpose of rebuttal and supplementary disclosures is just that – to [rebut and to] supplement.  Such disclosures are not intended to provide an extension of the expert designation and report production deadline.").  The second report provides additional information about the expected testimony of Dr. Chiles and adds Dr. Longwith.  (Doc. 141-1 at 138)  There is no showing Dr. Longwith's testimony is intended to rebut an expert designated by Defendant and the correspondence by Plaintiff's counsel makes clear, it is not.  (Doc 141-1 at 131 ("[W]e are still awaiting a retainer agreement from him."))

In his opposition to the motion, Plaintiff does not explain why he believes the disclosure was harmless or substantially justified.  Fed.R.Civ.P. 37(c)(1).  Rather, he focuses only on Defendant's failure to take the deposition of Dr. Longwith without providing any analysis of why Defendant should have done so despite Plaintiff's failure to provide a compliant expert disclosure. In any event, the second disclosure was not timely.  On November 8, 2011, the Court issued its scheduling order which read,

> . . . **The written designation of retained and non-retained experts shall be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A), (B), and (C) and shall include all**

8

**information required thereunder.** Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

(Doc. 86 at 2)  The parties were required to designate their experts no later than September 28, 2012 and their rebuttal experts no later than October 19, 2012 and discovery was to conclude by November 9, 2012.  (Doc. 90 at 3)  As noted above, Plaintiff's first expert disclosure was timely made on September 28, 2012.  The second disclosure, however, was not served occur until November 8, 2012, which was the same that discovery closed. (Doc. 141 at 8)

If a party fails to timely disclose its expert witnesses in a manner prescribed by the court, the party is not allowed to use that witness to supply evidence, unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) "gives teeth" to the disclosure requirements of Rule 26(a)(2)(A).  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  Exclusion of improperly disclosed expert witnesses is "self-executing . . . and automatic to provide a strong inducement for disclosure of material . . ." Id. at 1106 (citations and internal quotation marks omitted).  Thus, the burden falls on the party facing the sanction to demonstrate that its expert witness should not be excluded under Rule 37(c)(1).  Id. at 1107; see also Torres v. City of Los Angeles, 548 F.3d 1197, 1213 (9th Cir. 2008).

To determine whether the untimely disclosure was harmless, a court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure that prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Lanard Toys, Ltd. v. Novelty, Inc., 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)).  See Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

Defendant asserts that it has been prejudiced by the late designation. Truly, the designation made on the day that discovery closed precluded Defendant from conducting discovery as to Dr. Longwith.  The only way for Defendant to cure the prejudice would have been for it to make a motion to be allowed to take the deposition out of time.  However, in light of Plaintiff's failure to seek leave to make the disclosure, Defendant's failure to do this is understandable.  Though there is limited time to allow a deposition now, Plaintiff's counsel admitted at the hearing that an expert report for Dr.

Longwith has never been produced and there is no indication that one could be provided in sufficient time for the deposition to occur.

Finally, under the circumstances outlined, the Court finds Plaintiff's disregard of the scheduling order to be willful. See Henry v. Gill Industries, Inc., 983 F.2d 943, 948 (9th Cir. 1993) ("[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault.") (citation and internal quotation marks omitted). Therefore, ignoring the failure to timely and properly disclose the experts is unwarranted. See Wong, 410 F.3d at 1060 ("Parties must understand that they will pay a price for failure to comply strictly with scheduling . . . orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (citations and internal quotation marks omitted). This Court has the authority to strike an expert report. In re Arizona, 528 F.3d 652, 657 (9th Cir. 2009). "Rule 16 further recognizes the inherent power of the district court to enforce its pretrial orders through sanctions, Fed. R. Civ. P. 16(f), and the discretion of the [trial] judge to apply an appropriate level of supervision as dictated by the issues raised by each individual case." Id. (citing, e.g., Fed. R. Civ. P. 16(c)(2)). "Failure to comply with the scheduling order exposes a party to 'any just orders,' as determined by the [trial] judge, including dismissal, entry of default or contempt of court." Id. (citing Fed. R. Civ. P. 16(f), 37(b)(2)). Even now, Plaintiff takes issue with the fact Defendant failed to take the deposition Dr. Longwith despite the close of the discovery rather than providing any cogent basis for his failure to act timely. Therefore, Defendant's motion in limine as to Dr. Longwith is **GRANTED**.

As to Dr. Chiles, the Court's analysis is a little different and due to the untimeliness of the second expert disclosure, the Court considers only the first one. In this disclosure, Plaintiff indicated Dr. Chiles would testify as to "the causes and extent of Plaintiff Nehara's emotional, psychological and/or psychiatric injuries." (Doc. 141 at 123) Plaintiff's counsel admitted at the hearing he did not identify—in the disclosure or otherwise--what Dr. Chiles' opinions would be or the facts upon which

1 she bases these opinions.²

2 Importantly, courts have held that medical witness opinions regarding causation "go[ ] beyond what he saw and did and why he did it ... and [is] giving an opinion formed because there is a lawsuit ." Hermann v. Hartford Cas. Ins. Co., No. 2012 WL 5569769 (D. Colo. Nov. 15, 2012). Thus, for this topic, an expert report is required even if the doctor was not retained. On the other hand, the parties agree Dr. Chiles is required to work under the supervised of a licensed psychologist and is able only to make treatment recommendations which are evaluated by one who is qualified to make diagnoses and treatment decisions. Even assuming no expert report was required of Dr. Chiles—and the Court does not find this is the case--the failure to provide the summary of facts and the opinions to which Dr. Chiles would testify, is a significant failure without any justification.

Moreover, Plaintiff's failure to comply with the Rule 26 was not harmless. Not only did this cause Defendants to be unable to determine whether it needed to take the deposition of Dr. Chiles, it deprived Defendant of the ability to designate rebuttal expert testimony. This is a significant litigation advantage. On the other hand, Fed.R.Civ.P. 37(c)(1)(C), provides the Court broad discretion to craft an "appropriate sanction." See also, Yeti by Molly, 259 F.3d at 1106. Thus, in light of the fact Dr. Chiles was properly identified in the initial disclosure, the Court will **GRANT** the motion in limine but will permit Dr. Chiles to testify as a lay witness. She may testify <u>only as to what she perceived during her visits</u> with Plaintiff but not as to any information which falls within the purview of an expert.

## II.     Plaintiff's testimony regarding his medical conditions

Defendant seeks to preclude Plaintiff from offering medical opinion evidence in his testimony. (Doc.141). Defendant argue: "The Court should preclude Plaintiff from offering any evidence concerning his current medical condition or offering opinions or making inferences whether his current condition was caused or are [sic] related to this incident." Id. Specifically, Defendants argue Plaintiff should not be permitted to testify as to "a diagnosis, prognosis, opinions, inferences, or causation of his alleged injuries." Id. However, Defendants have no objection to Plaintiff testifying

---

² In light of the fact Plaintiff has identified this witness since the inception of this case, his failure to gather this information cannot be blamed on last-minute knowledge of this witness.

"as to what he experienced and felt as a result of the incident on July 24, 2007, what he did in response to those physical symptoms, and what he communicated to his doctors." Id.

Plaintiff argues he should be permitted to testify as to how he felt but also as to diagnoses and treatments. Plaintiff argues that Fed. R. Evid. 803(4) permits the introduction of testimony related to diagnoses and treatments, his medical history and symptoms and sensations and their inception and cause. Notably, however, this rule of evidence provides exclusions from the hearsay rule and does not permit an unqualified person from offering expert testimony.[3] A person is permitted to testify as to "scientific, technical or other specialized" information if the witness is "qualified as an expert by knowledge, skill, experience, training or education" and the testimony is based upon sufficient facts or data, the testimony is based upon reliable analysis and the witness applies this reliable analysis to the data. Fed. R. Evid. 702. However, an individual lacking such qualifications may only testify as to opinions "rationally based on the witness's perception" that is not based on specialized knowledge. Fed. R. Evid. 701.

Though Plaintiff is a trained nurse, he was not disclosed as an expert in this case. Thus, Plaintiff will not be permitted to offer any medical opinion or to report what any medical professionals told him about his condition. However, Plaintiff may testify about his own perceptions of what he felt when the injury occurred, how it felt over time and how it feels now, how his condition has impacted his life and as to any other information that is within his own personal knowledge based upon his own perceptions. Likewise, if relevant, he may cross-examine any testifying medical expert about his condition but he is not personally permitted to testify as to any scientific conclusions regarding his medical condition. Accordingly, Defendants' motion in limine is **GRANTED**.

Plaintiff argues that the medical records are admissible according to Fed. R. Evid. 803(6), as business records. However, there is no showing that the requirements of Fed. R. Evid. 803(6) have been met. Moreover, though testifying medical professionals may refresh their recollections using the

---

[3] In any event, this Fed. R. Evid. 803(4) permits Plaintiff to testify as about what he told medical professionals for purposes of diagnoses and treatment, assuming these statements are the type a doctor would rely upon in formulating a diagnoses or treatment plan; not what the medical professionals told him. Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir.1985) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse.").

medical records, the documents and the information contained in them is not admissible unless and until an adequate foundation is laid.

### III. Evidence related to Plaintiff's damages

Defendant moves the Court to exclude all evidence of Plaintiff's damages. In support of this motion, Defendant asserts that Plaintiff failed to provide documentation of his damages. Form the documents submitted, it appears Defendant repeatedly attempted to obtain these documents from Plaintiff but he failed to produce most of them. On the other hand, Defendant offers no explanation why it did not seek the Court's intervention through a motion to compel in order to obtain this information.

In any event, Plaintiff reports he does not intend to introduce documents other than those produced in discovery. However, Plaintiff does intend to testify he spent about $1,500 per month on medications. Other than inattention to this case, there is no explanation for why Plaintiff failed to obtain pharmacy records to document his medication costs—clearly, his pharmacy is within his control such that he was obligated to seek out these records for production. On the other hand, Defendant contends at his deposition, Plaintiff was unable to provide any estimate of his out-of-pocket expenses.[4] Therefore, the motion is **GRANTED IN PART** in that Plaintiff may not introduce documentation of damages not produced in discovery. Likewise, if he was unable to provide an estimate of his out-of-pocket pharmacy costs at the time of his deposition, he will not be permitted to do so at trial. If he provided an estimate at the deposition, he will be permitted to offer this testimony only if there is an adequate foundation laid.

### IV. Evidence related to other claims, written statements or verbal of discrimination, discrimination claims against CDCR employees

Defendant seeks to exclude evidence related to claims raised in this case but which have been disposed of through previous proceedings. Defendant notes that many claims were raised in the original complaint, the first amended complaint and the second amended complaint which did not appear in the third amended complaint—which is the operative complaint. Moreover, due to the

---

[4] It was the Court's intention to review Plaintiff's deposition testimony to determine the accuracy of this statement. Unfortunately, the portion of the transcript that was provided does not reveal this.

13

1  Court's order granting summary adjudication, the only claim remaining is for retaliation. Thus,
2  Defendant seeks to exclude evidence related to these other claims.
3  Defendant also seeks to exclude the evidence that employee Delores Waymire made
4  derogatory comments about Plaintiff's nationality and referred to him orally and in writing as "7-
5  Eleven." Defendant asserts this evidence does not pertain to the claim of retaliation because Plaintiff
6  admits Waymire did not take any adverse action against him when he complained. Likewise,
7  Defendant argues there is no evidence it took adverse action as a result.
8  Finally, Defendant asserts evidence of discrimination claims brought against CDCR employees
9  should be excluded. Defendant argues the filing of these claims has no tendency to prove the elements
10 of retaliation.
11 Plaintiff argues there is overlap between the retaliation claim and these other claims. Plaintiff
12 argues that the evidence that he believed he was suffering discrimination is pertinent and, apparently,
13 seeks to introduce evidence of every perceived event of discrimination.
14 To prevail, Plaintiff must prove (1) he engaged in protected activity; (2) his employer
15 subjected him to an adverse employment action; and (3) there is a causal link between the protected
16 activity and the adverse action. Bleeker v. Vilsack, 468 Fed.App'x 731, 732 (9th Cir. 2012); Ray v.
17 Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Plaintiff can prove retaliation by showing (1) the
18 adverse employment action occurred because he opposed conduct made unlawful by Title VII; or (2)
19 because he participated in the enforcement scheme established by Title VII. Hashimoto v. Dalton, 118
20 F.3d 671, 680 (9th Cir. 1997).
21 Thus, it is significant that Plaintiff engaged in protected activity and Plaintiff is required to
22 present evidence on this topic and will be permitted to do so. Notably, protected activities include
23 filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging
24 in other activity intended to oppose an employer's discriminatory practices." Raad v. Fairbanks N.
25 Star Borough, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation
26 marks omitted). The Ninth Circuit determined that "an employee who complains of a practice that has
27 a disproportionate impact on a protected group complains of unlawful discrimination and is protected
28 by the opposition clause." Gifford v. Atchison, Topeka & Santa Fe Ry. Co., 685 F.2d 1149, 1157 (9th

1  Cir. 1982). The employee need not "be aware that the practice is unlawful under Title VII at the time
2  of the opposition in order for opposition to be protected." Id. Thus, whether Plaintiff *was actually*
3  suffering discrimination is irrelevant to the question of whether he suffered retaliation for complaining
4  about it. In E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir. 1983), the Court held,
5  "It is not necessary, however, that the practice be demonstrably unlawful; opposition clause protection
6  will be accorded whenever the opposition is based on a "reasonable belief" that the employer has
7  engaged in an unlawful employment practice." Sias v. City Demonstration Agency, 588 F.2d 692, 695
8  (9th Cir. 1978) ["When an employee reasonably believes that discrimination exists, opposition thereto
9  is opposition to an employment practice made unlawful by Title VII even if the employee turns out to
10 be mistaken as to the facts."] Thus, because it is disputed whether Plaintiff had a good faith
11 reasonable belief that he was suffering unlawful discrimination, he has the obligation to prove this.

12         Likewise, presumably, Defendant will counter the prima facie case with evidence the adverse
13 employment action was taken for a legitimate, non-discriminatory reason. Thus, Plaintiff would be
14 entitled to offer evidence of pretext. Pretext may include evidence others who complained about
15 similar unlawful employment actions also suffered adverse employment actions. However, none of
16 this evidence may be presented to the jury unless there is a stipulation by the parties or the Court has
17 conducted a Fed. R. Evid. 104(c) hearing.

18         Nevertheless, Plaintiff may not transmute this case to a case raising claims of discrimination.
19 Indeed, all counsel are reminded that they are obligated to produce only that evidence which is
20 pertinent to the retaliation claim. Plaintiff's testimony and that of all witnesses SHALL be limited and
21 measured so that this trial does not devolve into a series of mini trials on collateral issues. Likewise,
22 despite Plaintiff's position to the contrary, though he will be permitted to present evidence that he
23 suffered emotional damages, he will not be permitted to present evidence related to the elements for an
24 intentional infliction of emotion distress. The Court is confident counsel knows the difference.

25         Therefore, Plaintiff may introduce evidence only which is relevant to the elements for
26 retaliation. He may not introduce evidence as to claims that have been excluded from trial. Finally,
27 Plaintiff SHALL not introduce evidence from "me too" witnesses or about "me too" witnesses in the
28 presence of the jury. Instead, the Court will take this evidence up outside of the presence of the jury to

determine whether it will be admitted. Defendant's motions in limine are **GRANTED IN PART** as set forth above.

### V. Evidence of the inmate attack

Defendant seeks to exclude evidence that correctional Officer Escarcega violated a policy of the CDCR or NKSP when he left an inmate unescorted in Plaintiff's presence. Defendant notes Plaintiff failed in discovery to identify the policy he believed was violated.

At his deposition and in response to written discovery, Plaintiff set forth a belief that a policy or protocol which prohibited leaving an unguarded inmate with a nurse. However, he could not identify the specific policy at issue. For its part, Defendant claims there was no policy violation.

Plaintiff notes these questions were posed to him before he received Defendant's document production which would have allowed him to identify the policy at issue. Plaintiff reports also that there is, in fact, a Code of Safe Practices which prohibits the action taken by Officer Escarcega. Based upon this, Plaintiff asserts this gives rise to an inference that the violation of the Code was done in retaliation for his making a complaint to his supervisor, two days before, about being treated unfairly.[5] He points to no evidence, other than the temporal proximity, for this supposition. In fact, at his deposition, the only basis for Plaintiff's belief that the event was motivated by discrimination is "my race." Moreover, the only basis for believing that the action was motivated by a desire to retaliate against him, was because he could think of no other basis for the breach of protocol.

On the other hand, the motion relates only to whether Plaintiff should be permitted to opine there is a policy, protocol or code which prohibited the officer's action. Admittedly, Plaintiff has no personal knowledge of the policies except as he has read on line. He has no training or expertise to opine what the correctional policy requires. Therefore, any testimony from Plaintiff regarding his opinion a policy was breached, lacks foundation. Thus, the motion is **GRANTED**. Plaintiff is permitted to testify about what he has observed in similar circumstances in the past but whether such a policy exists and whether it was violated on this occasion are questions that must be posed to correctional officer-witnesses.

---

[5] At the hearing, counsel clarified that this complaint related to concerns that he was not being provided sufficient safety assurances.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion in limine to exclude the transcripts and findings from the administrative hearings is **GRANTED**. However, as to documents used at these hearings and witnesses who testified at one or both of these hearings, the motion is **DENIED**.

2. Plaintiff's motion in limine to exclude witnesses not identified in discovery is **DENIED** except the motion is **MOOT** as to witnesses Flores and Wolfe;

3. Plaintiff's motion in limine to exclude the testimony of Michael Cavenaugh, the Court **GRANTS IN PART** the motion so that Cavenaugh will be precluded only from testifying that he has personal knowledge about the events of the shift Plaintiff worked on March 18-19, 2007.

4. Defendant's motion in limine to exclude witnesses not identified in discovery is **GRANTED** as to to Elizabeth Barnhart and Manju Nehara, Dr. David Mano and **DENIED** as to Bertha Sanchez, Jeff Kirby, Daniel Luna. The motion is **MOOT** as to Edward Lear;

5. Defendant's motion in limine to exclude the testimony of Dr. Longwith, the motion is **GRANTED**;

6. Defendant's motion in limine to exclude the testimony of Dr. Chiles is **GRANT IN PART** in that Dr. Chiles may not offer expert opinion—even if she formed these opinions during her therapy with Plaintiff--but may testify as a lay witness and offer evidence <u>only as to what she perceived during her visits</u> with Plaintiff;

7. Defendant's motion in limine to preclude Plaintiff from offering testimony related to his diagnoses or other information which comes within the purview of an expert is **GRANTED**;

8. Defendant's motion in limine to exclude evidence of Plaintiff's damages is **GRANTED IN PART.** Plaintiff may not introduce documentation of damages not produced in discovery nor will he be permitted to testify as to estimates of the pharmacy costs unless he offered this estimate at his deposition;

9. Defendant's motion in limine to exclude evidence related to claims which have been eliminated is **GRANTED IN PART**. Plaintiff may offer evidence which bears on whether he had a good faith reasonable belief that he was suffering unlawful discrimination and information as to his

emotion al damages.  However, as to claims of discrimination made by other employees, Plaintiff SHALL NOT introduce this evidence from any witness unless it is first reviewed by the Court in a Fed. R. Evid. 104(c) hearing and the Court authorizes its introduction;

10. Defendant's motion in limine to preclude Plaintiff from opining the inmate attack was caused by a breach of policy, procedure or code, is **GRANTED**.

IT IS SO ORDERED.

Dated: **March 26, 2013**           **/s/ Jennifer L. Thurston**
                                    UNITED STATES MAGISTRATE JUDGE