1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11   RAM NEHARA,                        )   Case No.: 1:10-cv-00491 JLT
                                         )
12              Plaintiff,               )   ORDER GRANTING BACK PAY AND FRONT
                                         )   PAY
13        v.                             )
                                         )
14   THE STATE OF CALIFORNIA, et al.,    )
                                         )
15              Defendants.              )
                                         )
16   _____    )

17

18   **I.       Background**

19         Plaintiff was employed as a registered nurse at North Kern State Prison.  During his

20   employment, Plaintiff alleged he suffered retaliation for complaining about discrimination based upon

21   his national origin.  After a six-day trial, the jury returned a verdict in favor of Plaintiff, finding he had

22   suffered retaliation in violation of Title VII. Currently before the Court, is Plaintiff's request for an

23   award of back and front pay and interest on the back pay award.

24   **II.      Factual Findings**

25         As a preliminary matter, in making the determination of a back pay or front pay award, the

26   Court is bound by the jury's determinations. Traxler v. Multnomah Cnty., 596 F.3d 1007, 1011 (9th

27   Cir. 2010), citing Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 964-66 (10th Cir. 2002).

28   "The true test is whether the jury verdict by necessary implication reflects the resolution of a common

                                            1

factual issue. If so, the district court may not ignore that determination, and it is immaterial whether, as here, the district court is considering equitable claims with elements different from those of the legal claims which the jury had decided (as may often be the case)." <u>Ag Servs. of Am., Inc. v. Nielsen</u>, 231 F.3d 726, 732 (10th Cir.2000).   "[W]hen the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way." <u>Wade v. Orange County Sheriff's Office</u>, 844 F.2d 951, 954 (2nd Cir.1988).

With this in mind, the Court adopts the explicit and implicit findings of the jury and finds:

1.      Plaintiff complained to his employer that he was being subjected to discrimination based upon his national origin;

2.      Michael Cavenaugh initiated Plaintiff's firing by seeking out reports about Plaintiff's job performance and preparing a report detailing job deficiencies;

3.      Michael Cavanaugh initiated the accusation against Plaintiff's registered nursing license with the California Board of Registered Nursing.

4.      The acts by Michael Cavanaugh formed the basis for the determination Defendant retaliated against Plaintiff in violation of Title VII;

5.      As a result of the retaliation by Defendant, Plaintiff was terminated on April 30, 2009;

6.      As a result of the retaliation by Defendant, Plaintiff's registered nursing license was revoked on August 4, 2010;

7.      At the time Plaintiff was terminated, he earned $7,650.10 per month;

8.      Plaintiff consistently worked overtime hours while employed by Defendant;

9.      During the full work weeks between December 2007 and March 2008, Plaintiff worked an average of 42.5 hours per week of overtime;

10.     At the time Plaintiff was terminated, he earned not less than $1,500 per month in overtime;

11.     At the time of trial, Plaintiff was 45 years old;

12.     Plaintiff has worked as a nurse from 1989 through July 2009;

13.     Plaintiff has a master's degree in nursing which he obtained in May 2011;

14.     In connection with his effort to complete his masters's degree in nursing, Plaintiff

completed more than 600 hours of clinical work supervised by a doctor between January 2010 and April 2011.

15.    Plaintiff maintains a nursing license issued in New Zealand;

16.    Plaintiff suffered emotional distress as a result of Defendant's retaliation against him;

17.    Plaintiff continues to take prescription medication for conditions related to the emotional distress caused by Defendant's retaliation against him;

18.    For "approximately three months," between May 2009 and July 2009, Plaintiff worked as a nurse at Sutter Delta Medical Center;

19.    While he worked at Sutter Delta Medical Center, Plaintiff earned between "6 to $7,000" per month;

20.    Plaintiff's lost his job at Sutter Delta Medical Center when the employer learned of the accusation made against Plaintiff's nursing license;

21.    Plaintiff used diligent efforts to obtain employment after he was terminated by Defendant;

22.    At the time of trial, Plaintiff lived in the State of Washington;

23.    At the time of trial, Plaintiff lived separately from his wife and children;

24.    From August 2009 through February 2013, Plaintiff was unemployed;

25.    Plaintiff began working in March 2013, as a part-time stocker at a convenience store;

26.    As a stocker, Plaintiff earns $9.19 per hour and earned "[l]ess than $1,000" per month;

27.    After Plaintiff was terminated by Defendant, he received approximately 90 weeks of unemployment payments beginning in late 2009;

28.    Plaintiff has appealed the revocation of his nursing license.

**B.    Back Pay**

Under 42 USC § 2000e-5(g)(1), a plaintiff who has demonstrated an unlawful employment action may seek "reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." Any wages made during the interim are chargeable against the back pay award. Id.

3

1    Generally, back pay should be denied only in limited circumstances and only where it is

2    unnecessary to furthering the goal of eradicating discrimination or to make the plaintiff whole. Sias v.

3    City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978).  "Where racial discrimination is

4    concerned, 'the (district) court has not merely the power but the duty to render a decree which will so

5    far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the

6    future.'"  Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975).  Back pay is awarded "from the

7    date of the discriminatory act until the date of final judgment." Thorne v. City of El Segundo, 802 F.2d

8    1131, 1136 (9th Cir.1986).

9    Here, the jury determined that Defendant retaliated against Plaintiff for making complaints of

10   discrimination related to his national origin.  (Doc. 177 at 2)  Though Defendant argues that back pay

11   should not consider lost earnings caused by the loss of Plaintiff's nursing license, the argument that

12   CDCR is not to blame for this action ignores that the basis for the license revocation was all related to

13   Plaintiff's employment at NKSP.  Moreover, indisputably, the complaint to the nursing board was

14   initiated and instigated by Mike Cavanaugh.  In light of the thrust of the theory of Plaintiff's case—

15   that Cavanaugh was the primary bad actor—the Court cannot conclude that the jury did not find that

16   CDCR caused the revocation of Plaintiff's license.

17   Finally, the Court finds Defendant did not carry its burden of demonstrating Plaintiff failed to

18   use diligence to mitigate his damages.  Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497(9th Cir.

19   1995).  The evidence shows Plaintiff obtained two nursing jobs after he was terminated by Defendant

20   but due to the accusation against his license, both jobs were lost.  Moreover, Plaintiff testified he

21   applied for a large variety of jobs but was not hired until March 2013 when he obtained a job as a part-

22   time stocker at a convenience store.  Though Defendant noted Plaintiff completed his master's

23   degree—started in 2008—after he was terminated, there is little information that this interfered with

24   job-seeking activities or that this took him out of the work force.[1]  Thus, the Court does not find

25   Plaintiff failed to mitigate his damages.

26

27

28   _____

[1] Though his preceptor hours, generally, included 8-hour work days, there is no evidence that this could not have been
completed despite carrying a full-time job.

4

The Court finds Plaintiff's salary on April 30, 2009 was $7,650.10 per month.[2]  Likewise, the evidence demonstrated that Plaintiff worked overtime consistently throughout his employment. Indeed, the evidence presented by Defendant related to the period in late December 2006 through March 2007, demonstrated that, on average, Plaintiff worked 42.5 hours of overtime per week. However, because there is no evidence other than for the period described, as to the amount of overtime Plaintiff worked, the Court finds the $1,500 per month suggested by Plaintiff as the lowest overtime amount he received, to be reasonable compensation for the lost overtime.

On the other hand, Plaintiff testified he worked at Sutter Delta Medical Center for "approximately three months."[3]  During this period, he testified he earned "between 6 to $7,000" per month.  He was offered another nursing job but when the employer learned of the accusation against Plaintiff's nursing license, the offer was rescinded.  Finally, at trial Plaintiff testified his job as a stocker at the convenience store paid him "[less] than $1,000" per month. Other than these jobs, Plaintiff had not been able to find work since his termination.

Based upon the foregoing, the Court finds Plaintiff lost salary in the amount of $7,650.10 plus $1,500 overtime for 43 months, $1,500 overtime for the three months he worked at Sutter Delta Medical Center and $7,650.10 plus $1,500 overtime minus Plaintiff's $1,000 per month for the two months he has worked as a convenience store stocker. Thus, the Court **AWARDS** Plaintiff $414,254.50 in back pay.

### C.    Front Pay

"Front pay is the term used to describe damages paid as [prospective] compensation for training or relocating to another position." Caudle v. Bristow Optical Co., Inc., 224 F.3d at 1020 (quoting Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1167 (9th Cir.1984), overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) Front pay is designed to compensate a plaintiff for the loss of the job when he cannot be reinstated to that position.  Gotthardt

---

[2] Though Plaintiff testified he received benefits from his employment, including medical insurance and retirement contributions, there was no testimony provided as to the value of these benefits.  Thus, the Court has no evidence upon which to determine these losses.
[3] In addition, on cross-examination, Plaintiff testified he received unemployment benefits for approximately 90 weeks. However, Defendant failed to provide evidence of the amount of the benefits.

v. Nat'l R.R. Passenger Corp, 191 F.3d 1148, 1156 (9th Cir. 1999).  Though the purpose of front pay is to ensure the plaintiff suffering unlawful employment practices is made whole but it is "not to guarantee every claimant who cannot mitigate damages by finding comparable work an annuity to age 70." Id. at 1157 quoting Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988).  Instead, front pay is intended to be temporary in nature.  Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1347 (9th Cir.1987).  Front pay should extend only for a reasonable period for the victim to secure comparable employment. See Goss v. Exxon Office Sys. Co., 747 F.2d 885, 889 (3rd Cir.1984) (awarding four months front pay).  The longer period of time for which front pay is sought the greater the speculative nature of a front pay award becomes.  Peyton v. DiMario, 287 F.3d 1121, 1128 (D.C.Cir.2002).

Nevertheless, by its nature, a front pay award requires a certain amount of speculation by the Court.  Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 870 (6th Cir.1991); Green v. USX Corp., 843 F.2d 1511, 1531 (3rd Cir.1988).  In Traxler v. Multnomah Cnty., 596 F.3d 1007, 1011 (9th Cir. 2010), the Court cited with favor Downey v. Strain, 510 F.3d 534, 544 (5th Cir.2007) which held, "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts."  To determine an award for front pay, the Court is required to make predictions of the future upon reasonable bases but "it's considered judgments about future events will not be upset on appeal unless clearly erroneous." Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1213 (7th Cir. 1989).

"Factors that courts have considered in determining the amount of a front pay award include: (1) the length of prior employment; (2) the permanency of the position held; (3) the nature of the work; (4) the age and physical condition of the employee; (5) possible consolidation of jobs; and (6) myriad other nondiscriminatory factors which could validly affect the employer/employee relationship." Sanders v. City of Newport, 602 F.Supp.2d 1195, 1201-02 (D.Or.2009) (citing Reneau v. Wayne Grifin & Sons, Inc., 945 F.2d 869, 871 (5th Cir.1991)).

Plaintiff argued he should receive 11 years of front pay based upon his age, his stated desire to work until age 70.  Plaintiff based this request upon the Gotthardt case cited above which was the period of time for which the plaintiff in that case was compensated.  Gotthardt, 191 F.3d at 1157.

1  However, in <u>Gotthardt</u>, the plaintiff was 59 years old, with limited educational and vocational

2  background, in failing health and expert testimony revealed she would not be able to return to the

3  work force.  <u>Id</u>.

4          By contrast here, Plaintiff is 45 years old, has significant education—including a master's

5  degree—and employment history and, though he testified he continued to suffer the mental effects of

6  the retaliation, there was no expert opinion as to the length of time his emotional impairment was

7  expected to last.  Moreover, the evidence demonstrated that despite these impairments, he was able to

8  see patients during his preceptor training and to consistently work 8-hour days.  Thus, <u>Gotthardt</u> is

9  factually distinct.

10          On the other hand, it is without dispute Plaintiff's registered nursing license has been revoked

11  though it is uncertain whether it will be restored to him through his ongoing appeal.  However, given

12  that Plaintiff was not successful on his petition for writ of mandate in the Kern County Superior Court,

13  and given the standard of review on appeal in the Fifth District Court of Appeal—abuse of discretion--

14  there is a distinct unlikelihood he will succeed on appeal.  Though Plaintiff continues to have a nursing

15  license in New Zealand, there was no evidence he or his family were willing to return to that country

16  for Plaintiff to obtain a job.  The suggestion that Plaintiff should be forced to move there or suffer a

17  reduction in front pay damages is unduly harsh in light of the jury's determination Defendant

18  subjected Plaintiff to retaliation in violation of Title VII.  Thus, Plaintiff's immediate future

19  employment is unlikely to be as a nurse and is unlikely to pay him at the same rate as he was earning

20  when he was employed by Defendant.

21          On the other hand, Plaintiff has the demonstrated capacity to obtain educational training.

22  Indeed, he obtained his master's degree despite the strife he was encountering at work and despite

23  having been terminated.  Thus, the Court finds Plaintiff can, within a short time, obtain training or

24  engage in a new career which will restore him to a similar earnings capacity he enjoyed while

25  employed by Defendant.

26          Given this, the Court finds an award of front pay equivalent to three year's salary and overtime

27  minus the $1,000 pay he is receiving currently at his stocker job, is adequate to wholly compensate

28  Plaintiff.  Thus, the Court **AWARDS** Plaintiff $293,403.60 in front pay.

1    **D.      Interest on back pay**

2        Plaintiff has requested the Court award interest on any back pay award.  Title VII authorizes a

3    district court to grant pre-judgment interest on a back pay award. See, e.g., Jadwin v. County of Kern,

4    767 F.Supp.2d 1069, 1095-1096.  "Prejudgment interest is an element of compensation, not a penalty."

5    Dishman v. UNUM Life Ins. Co. of America, 269 F.3d 974, 988 (9th Cir. 2001).  Moreover, where

6    "prejudgment interest is an element of complete compensation," "Compound prejudgment interest is

7    the norm in federal litigation and the decision whether to award it is left to the trial court's discretion."

8    Termine ex rel. Termine v. William S. Hart Union High Sch. Dist., 288 F. App'x 360, 363 (9th Cir.

9    2008)

10        Under 28 USC § 1961, the postjudgment interest rate on a federal claim is "the average

11   accepted auction price for the last auction of fifty-two week United States Treasury bills settled

12   immediately prior to the date of judgment." Here, the relevant Weekly Average 1–year constant

13   maturity treasury yield is .12%.[4]  On the other hand, had Plaintiff had to borrow this money, he would

14   have had to pay at least the federal prime rate which, for the last 12 months has been 3.25%.  Between

15   the two amounts, the Court finds the prime rate to more accurately provide complete compensation.

16   Thus, the Court awards prejudgment interest in the amount of 3.25% compounded annually.  Thus, the

17   total amount of prejudgment interest awarded is $57,995.63.

18                                          **ORDER**

19       Based upon the foregoing, the Court **ORDERS**:

20       1.      Back pay is **AWARDED** to Plaintiff in the amount of $414,254.50;

21       2.      Front pay is **AWARDED** to Plaintiff in the amount of $293,403.60;

22   ///

23   ///

24   ///

25   ///

26   ///

27

28   ---
     [4] This rate may be found by referring to the Federal Reserve website, located at
     http://www.federalreserve.gov/releases/h15/current.

1        3.    Prejudgment interest on the back pay award is **AWARDED** in the amount of

2    $57,995.63.

3

4    IT IS SO ORDERED.

5        Dated:   **May 3, 2013**               **/s/ Jennifer L. Thurston**

6                                              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28